## SUPREME COURT.

### SAMUEL EMBERSON agt. THOMPSON DEAN.

Where a *real estate broker* on receiving a piece of real estate from the owner for sale, being apprehensive that an adjoining owner may purchase it, proposes to the owner that if such adjoining owner does purchase he (the owner) shall pay the broker his *commissions*, as such prospective purchaser, being unfriendly to the broker, would not purchase from or through him, to which proposition the owner assents, and the property is subsequently sold to such adjoining owner, the broker is entitled to his commissions from the owner, although it is claimed by him that the property was sold by another firm of real estate brokers and that the plaintiff had nothing to do with the sale of it.

The verdict of the jury, upon conflicting and contradictory testimony in such cases, in favor of the plaintiff, held conclusive.

*New York Special Term, May,* 1872.

MOTION by defendant for a new trial.

Plaintiff sued to recover commissions on sale of real estate belonging to defendant. Defendant denied employment and sale by or through plaintiff's agency.

Evidence showed on the part of plaintiff that he was employed by defendant to sell the property, consisting of house, lot and furniture, at Tarrytown, N. Y., for $60,000; that he spoke to Mr. Roberts and desired him to buy it; that before doing so he (plaintiff) said to the defendant that he would not take hold of the property unless he (defendant) would protect him against Mr. Roberts, who owned the adjoining property; that Mr. Roberts would buy the place or he would get some friend of his to buy it, and being unfriendly toward the plaintiff, would not buy it from him, and he would lose his commission, &c.; that the defendant then told him that if Mr. Roberts or any of his friends

Emberson agt. Dean.

bought it he (Dean) would pay the plaintiff's commission. Plaintiff further showed that the property was sold to Mr. Roberts and conveyed to his wife for the price of $50,000.

On the part of the defendant it was proven that the sale to Mr. Roberts was effected through the agency of Mallory, Blackwell & Co., and that the plaintiff had nothing to do with it, and the defendant denied the conversation and agreement as to commissions, as testified to by the plaintiff.

The only question submitted to the jury was whether the agreement between the plaintiff and defendant, on a payment of commissions in case Mr. Roberts bought, was or not made, the court charging that if it was made the defendant was entitled to a verdict.

The jury found for the plaintiff, and the defendant moved for a new trial.

T. G. SWARTWOUT, *attorney for plaintiff.*
J. SADLER, *attorney for defendant.*
J. R. DOS PASSOS, *of counsel.*

BRADY, *J.*—The plaintiff's claim rested upon the alleged understanding that if Mr. Roberts purchased the defendant's property he was to be paid a commission. He was to be protected against Roberts, because the latter was unfriendly to him, as he believed, and would not buy from him or through his agency. The plaintiff, having made this contract with the defendant, entered upon the discharge of his office, advertised the property, spoke to Roberts about it, advising him to buy, and to others as well. The agreement was not an unreasonable one on the part of the plaintiff. If he believed that Roberts would buy, but not from or through him, it would have been a waste of time and money to have taken any steps to sell and to have advertised the property for sale, and hence it was natural that he should have protected himself against such a contingency. It may be said that the defendant acted unwisely in making such a contract, or that it was unusual and extraordinary. All that may be conceded, and yet the contract

may be established and sustained. If it were not for the infinite and still-continuing varieties of contracts, agreements and understandings, in which a palpable departure from the ordinary mode of dealing with the particular subject involved is shown, the courts would have less to do, and the volumes of reports be numerically less formidable. The defendant had the benefit of all that his denial of the plaintiff's statement entitled him to. The jury were told that in cases where a conflict of evidence marked the trial, they might consider the inherent probability of the claim advanced, and the statement on which it was based. In deliberating upon the case, they determined that the plaintiff's story was true, and that he was employed to sell upon the understanding that if Mr. Roberts became the purchaser he should be paid his commission. It cannot be said that the testimony is so clearly in favor of the defendant as to justify the impression that the jury acted from bias, partiality or corruption. There was a conflict of evidence, and a finding either way might have been made without doing violence to any rule of law applicable to trials by jury. It has often happened that courts have been dissatisfied with verdicts rendered, but that does not, in my judgment, militate against the system. I have great confidence in the trial by jury, although I do not believe it to be a perfect mode of disposing of disputes. I am not aware of any plan which is.

I think a new trial cannot be granted.